IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

VICKI A. LINDSEY,
                Plaintiff,

v. ·                                     Civil Action No. 3:19-cv-634

EDWIN JEWETT, et al.,
                Defendants.

## OPINION

Vicki A. Lindsey has sued five employees of the Richmond Circuit Court, alleging that they prevented her from successfully appealing from an adverse judgment or otherwise obtaining a favorable result in a legal malpractice case she filed in that court. The defendants—Edwin Jewett, Cecelia Hargrove, Donna Lythgoe, Denise Harris, and Sandra Ceruti—have moved to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.[1] Because Lindsey fails to state a plausible claim for relief, the Court will grant the defendants' motions to dismiss.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

The events giving rise to this case began when Lindsey sought to appeal an unfavorable decision in a legal malpractice case she filed in the Richmond Circuit Court. (Am. Compl. ¶ 2.) To prepare for her appeal, she asked staff in the clerk's office for access to the trial exhibits and other court records. (*Id.* ¶ 3.) She filed a motion on August 31, 2017, asking the court to preserve and provide access to the exhibits and records. (*Id.*) Despite Lindsey's efforts, the court took six months to digitize and upload the requested documents to its database. (*Id.* ¶ 6.) Lindsey says that

---

[1] The defendants' motions to dismiss include the required notice under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (per curiam).

her lack of access to the trial documents hindered her ability to prepare for her appeal, including drafting a statement of facts and gathering the required certified transcripts. (*Id.* ¶ 4.) She alleges that employees in the clerk's office and in the third-floor judicial chambers failed to give her the requested documents even though they had "full access to the court's record [and] notice that [Lindsey] was being denied access to her records." (*Id.* ¶ 9.)

Around the same time, Lindsey also sought to obtain the certified transcripts from the jury trial. (*Id.* ¶ 24.) The court reporting firm told her that it would not provide the transcripts until she paid two outstanding invoices for previously ordered transcripts. (*Id.*) Lindsey says that the court reporting firm had not previously notified her of these unpaid invoices and had sent the outstanding invoices to her prior counsel's law firm. (*Id.*)

Still struggling to obtain the certified transcripts required for her appeal, Lindsey decided to ask the trial judge to approve a statement of facts. (*Id.* ¶ 26.)[2] Twice in late August, 2017, Lindsey asked Ceruti to schedule a hearing regarding her statement of facts. (*Id.* ¶¶ 28-30.) Because Lindsey thought the rules required the court to hold a hearing within fifteen days of filing her statement of facts, she wanted to ensure that the court held a hearing within that timeframe.[3] (*Id.* ¶ 28.) She did not receive a response to either request. (*Id.* ¶¶ 28-30.)

On September 8, 2017, Lindsey filed the statement of facts and again requested a hearing within fifteen days. (*Id.* ¶ 33.) Ceruti responded on September 15, 2017, and scheduled the hearing for October 16, 2017. (*Id.* ¶ 34.) This date fell outside the fifteen-day period that Lindsey thought

---

[2] The Rules of the Supreme Court of Virginia allow appellants to submit a statement of facts signed by the trial judge instead of a certified transcript. Va. Sup. Ct. R. 5:11(e).

[3] Rule 5:11(e)(1) requires that the appellant's statement of facts "be presented to the trial judge no earlier than 15 days nor later than 20 days after such filing." Va. Sup. Ct. R. 5:11(e)(1).

the rules required for such hearings. (*Id.*) At the hearing, the trial judge declined to certify Lindsey's statement of facts and instead recommended that Lindsey supply the transcripts. (*Id.* ¶ 35.) The judge also ordered defense counsel to help Lindsey obtain the trial exhibits. (*Id.*) Defense counsel directed Lindsey to the clerk's office, which had not provided her any records up to that point. (*Id.*)

Eventually, Lindsey managed to order the certified transcripts. (*Id.* ¶ 36.) She noticed inaccuracies in the transcripts but nevertheless submitted them on October 24, 2017. (*Id.*) On October 31, 2017, Jewett sent the records, still with no trial exhibits, to the Supreme Court of Virginia. (*Id.* ¶ 40.) The Supreme Court of Virginia rejected Lindsey's records. (*Id.*)

In early November, 2017, the clerk's office told Lindsey that court staff had uncovered some of the trial exhibits and records. (*Id.* ¶ 41.) On November 22, 2017, Ceruti told Lindsey that the court had located additional records. (*Id.* ¶ 12.) Upon reviewing these documents, Lindsey noticed that some records were either altered or missing, including Lindsey's "most critical evidence and exhibits." (*Id.* ¶ 13.) She also noticed that the records "had been scrambled and scattered like a deck of cards." (*Id.* ¶ 41.) Later, she learned that she received the records out of order because someone had clicked a button to "alphabetize" them. (*Id.* ¶ 44.)

The Supreme Court of Virginia denied Lindsey's petition for appeal on February 1, 2018. (*Id.* ¶ 50.) The court explained that Lindsey failed to timely file the transcript or have the trial judge sign her statement of facts. (*Id.*) Lindsey attributes her unsuccessful malpractice case and failed appeal to the defendants. (*Id.* ¶ 58.) She also says that the defendants selected the jury pool in her malpractice case in a manner that was "favorable to the [malpractice] defendants." (*Id.* ¶ 57.) She contends that the defendants withheld the information required for her appeal and deprived her of her right to a fair trial. (*Id.* ¶¶ 58-59.)

Lindsey then filed this case, alleging that the defendants engaged in a conspiracy to prevent her from lodging a successful appeal or otherwise obtaining a favorable result in her malpractice case. Lindsey's amended complaint asserts the following claims: conspiracy to interfere with her civil rights in violation of 42 U.S.C. § 1985 (Count One), deprivation of civil rights in violation of 42 U.S.C. § 1983 (Count Two), conspiracy in violation of 18 U.S.C. § 241 (Count Three), deprivation of civil rights in violation of 18 U.S.C. § 242 (Count Four), denial of equal civil rights under 28 U.S.C. § 1331 (Count Five), violation of the Fifth and Fourteenth Amendments' Due Process Clause and the Fourteenth Amendment's Equal Protection Clause (Count Six), willful and wanton negligence and reckless negligence (Count Seven), and gross negligence and violation of public trust (Count Eight).

## II. **LEGAL STANDARD**

The defendants have moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). A motion under Rule 12(b)(1) tests the Court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When the plaintiff appears pro se, as Lindsey does here, courts do not expect the pro se plaintiff to frame legal issues with the clarity and precision expected from lawyers.  Accordingly, courts construe pro se complaints liberally.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  This principle of liberal construction has its limits.  *Id.*  Courts do not need to discern the unexpressed intent of the plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Id.*

### III. **DISCUSSION**

A court must first decide whether it has subject matter jurisdiction before deciding the merits of the case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1986).  A court lacks jurisdiction when a party does not have standing to bring the case.  *See AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006) (per curiam).

#### A. *Subject Matter Jurisdiction*

Federal courts have jurisdiction over "cases" and "controversies."  U.S. Const., Art. III, § 2.  To have standing under Article III, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"At the pleading stage, plausible factual allegations, which the Court accepts as true, may suffice to establish each element of standing." *Stone v. Trump*, 400 F. Supp. 2d 317, 338 (D. Md. 2019).

The defendants argue that Lindsey's injury is not fairly traceable to their conduct. They say that Lindsey—not the defendants—had the responsibility to secure the records necessary to seek post-trial relief. The defendants also argue that she cannot show that the Supreme Court of Virginia would have rendered a favorable judgment but for their alleged conduct. Lindsey, however, alleges that the defendants failed to perform various administrative or ministerial tasks, which prevented her from having the opportunity to appeal her case. Mindful that the Court must "resolve all doubts and draw all reasonable inferences in the plaintiff's favor as to the allegations about each causal link" at the pleading stage, *Stephens v. Cty. of Albemarle*, No. 3:04cv81, 2005 WL 2076417, at *13 (W.D. Va. Aug. 26, 2005), Lindsey adequately pleads that her injury arose out of the defendants' alleged conduct.

### B. Quasi-Judicial Immunity

The defendants also argue that they enjoy quasi-judicial immunity as employees of the Richmond Circuit Court. Judges have absolute immunity from suits regarding acts committed within their judicial discretion. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). To shield officers of the court from "the danger that disappointed litigants . . . will vent their wrath on clerks, court reporters, and other judicial adjuncts," judicial immunity also extends to quasi-judicial officials in certain circumstances. *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992).

Quasi-judicial immunity shields judicial subordinates from liability for acts performed while "following a judge's order," but not while "carrying out a judge's order in a manner not sanctioned by the judge." *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008) (per curiam). In other words, subordinates enjoy quasi-judicial immunity when "acting pursuant to court direction"

or when "performing a discretionary duty." *Harbeck v. Smith*, 814 F. Supp. 2d 608, 630 (E.D. Va. 2011) (holding that a court clerk did not enjoy quasi-judicial immunity for failing to act on a letter regarding the plaintiff's unlawful detention).

In this case, Lindsey does not allege that the defendants acted under a judge's "explicit instruction" when they allegedly failed to give her access to court records or other documents. *See Mills*, 287 F. App'x at 279. Instead, Lindsey says that the defendants failed to perform simple ministerial duties. *See McCray v. Maryland*, 456 F.2d 1, 4 (4th Cir. 1972), *abrogated on other grounds by Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995) ("[T]here is no basis for sheltering the clerk from liability . . . for failure to perform a required ministerial act such as properly filing papers."). Thus, the defendants may not invoke quasi-judicial immunity at the pleading stage for allegedly failing to provide access to court records or other documents.

Quasi-judicial immunity, however, shields Ceruti for her alleged failure to schedule a timely hearing on Lindsey's statement of facts. Because "[a] court's inherent power to control its docket is part of its function of resolving disputes between parties," judicial subordinates enjoy quasi-judicial immunity for alleged harms "related to [a] delay in scheduling." *Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997). Thus, quasi-judicial immunity protects Ceruti from civil liability arising out of her alleged failure to schedule a timely hearing.

### C. Failure to State a Claim

#### 1. Count One: Section 1985

In Count One, Lindsey alleges that the defendants conspired to interfere with her civil rights in violation of 42 U.S.C. § 1985. To state a claim under § 1985, Lindsey must plead facts showing (1) a conspiracy; (2) that the purpose of the conspiracy was to deprive Lindsey of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in

furtherance of the conspiracy; and (4) injury to Lindsey's person or property, or deprivation of a right or privilege of United States citizenship. *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983). The defendants argue that Lindsey fails to plead facts showing that any conspiracy existed. They say that the doctrine of intracorporate immunity shields them from liability because they all work for the Richmond Circuit Court. They further argue that Lindsey's allegations show nothing more than parallel conduct.

The doctrine of intracorporate immunity bars Lindsey's claim in Count One. Under the doctrine of intracorporate immunity, a "corporation cannot conspire with itself any more than a private individual can." *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985). The doctrine "deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency." *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013).

In this case, Lindsey alleges that each defendant worked for the Richmond Circuit Court when the events at issue allegedly took place.[4] (Am. Compl. ¶¶ 18-20.) The defendants' alleged conduct, which concerns administrative tasks such as providing (or failing to provide) access to records and other documents, falls squarely within the scope of their employment at the Richmond Circuit Court. Because the doctrine of intracorporate immunity shields employees of a single entity from liability for civil conspiracy, the Court will dismiss Count One with prejudice.[5]

---

[4] That the defendants work in different offices or work on different floors of the courthouse does not matter. *See, e.g.*, *Walsh v. Logothetis*, No. 3:13-cv-401-JAG, 2014 WL 229588 at *12 (E.D. Va. Jan 21, 2014) (holding that the doctrine of intracorporate immunity shielded the defendants who qualified as agents of Virginia Commonwealth University and thus of the Commonwealth).

[5] Even if the doctrine of intracorporate immunity does not apply, Lindsey fails to state a claim in Count One because she does not plead facts plausibly showing that the defendants entered into any agreement. To plead a civil conspiracy, a plaintiff must "show an agreement or a 'meeting

### 2. *Counts Two and Six: Claims Under Section 1983*

In Count Two, Lindsey asserts that the defendants violated her civil rights under 42 U.S.C.

§ 1983.  In Count Six, Lindsey asserts that the defendants violated her rights to due process and

equal protection pursuant to § 1983.[6]  To state a claim under § 1983, a plaintiff must allege that

the defendant (1) acted under the color of state law and (2) deprived the plaintiff of a right secured

by the Constitution.  *Brown v. Transurban USA Inc.*, 144 F. Supp. 3d 809, 833-34 (E.D. Va. 2015).

#### a. Due Process

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty,

or property, without due process of law." U.S. Const. amend. XIV, § 1.  Lindsey alleges that the

defendants violated her due process rights by thwarting "any chance to have her appeal heard and

fairly reviewed" and preventing "a fair hearing and a fair trial." (Am. Compl. ¶ 58.)

Under certain circumstances, the Due Process Clause of the Fourteenth Amendment

protects a citizen's right of access to the courts.  *See Bodie v. Connecticut*, 401 U.S. 371, 380-81

---

of the minds' by defendants to violate [her] constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).  The amended complaint discusses various ways in which the defendants allegedly denied Lindsey access to court records and tried to prevent her from winning her case or preparing her appeal.  But Lindsey does not plead facts that plausibly show that the defendants acted in concert.  At most, the amended complaint alleges parallel conduct among different court employees, which falls short of a plausible civil conspiracy claim.

[6] In Count Six, Lindsey alleges that the defendants violated her "rights to due process and equal protection under the [Fifth] and [Fourteenth] Amendment[s] to the United States Constitution." (Am. Compl. at 19.)  "The Fourteenth Amendment does not create a direct cause of action." *Weathers v. Univ. of N.C. at Chapel Hill*, No. 1:12cv1059, 2013 WL 5462300, at *7 (M.D.N.C. Sept. 30, 2013).  "Instead, § 1983 provides a statutory cause of action for all citizens injured by an abridgment of the protections contained in the Constitution, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment." *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 759 (M.D.N.C. 2005).  The Court, therefore, will construe Count Six as a § 1983 claim.  *See Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (noting that § 1983 is "a vehicle for vindicating preexisting constitutional and statutory rights").  Because Counts Two and Six appear to assert the same claims, the Court will consider them together.

9

(1971); *see also McCray*, 456 F.2d at 6 (recognizing a "constitutionally based right of access to courts"). "To state a claim for violation of a [d]ue [p]rocess right, a plaintiff must initially demonstrate conduct which rises to the level of a constitutional 'deprivation.'" *Lee X v. Casey*, 771 F. Supp. 725, 732 (E.D. Va. 1991). "To satisfy this requirement, a plaintiff must show intentional, deliberate[,] or arbitrary misconduct." *Id.* Indeed, "[i]njuries inflicted by governmental negligence are not addressed by the United States Constitution." *Daniels v. Williams*, 474 U.S. 327, 333 (1986).

Even if Lindsey could show that the defendants' conduct somehow violated her due process rights by hampering her ability to pursue post-trial relief, Lindsey has failed to plead facts plausibly showing that the defendants engaged in any intentional, deliberate, or arbitrary misconduct.[7] Among other allegations, Lindsey asserts that the defendants did not respond to her requests for access to court records, mishandled and altered her trial exhibits, and failed to send her a copy of a court order. (Am. Compl. ¶¶ 24, 26, 28, 30, 41-47, 53, 56.) Lindsey's allegations suggest that the defendants' conduct "stemmed at most from negligence, and not from the requisite '*deliberate* decision of government officials to deprive a person of life, liberty, or property.'" *McDonald v. Dunning*, 760 F. Supp. 1156, 1161 (E.D. Va. 1991) (quoting *Daniels*, 474 U.S. at 331). Because no cause of action exists "under § 1983 for negligent conduct that results in a denial of access to the courts," *Pink*, 52 F.3d at 78, Lindsey cannot state a due process claim. Accordingly, the Court will dismiss Lindsey's due process claim with prejudice.[8]

---

[7] Lindsey's conclusory allegation that the "[t]he conduct of the defendants in the Richmond Circuit Court was willful, intentional[,] and wanton conduct" does not render her due process claim plausible. (Am. Compl. ¶ 61.) Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

[8] To the extent that Lindsey seeks to complain about injuries caused by losing her malpractice case in the Richmond Circuit Court, the *Rooker-Feldman* doctrine bars such a claim.

### b. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the [E]qual [P]rotection [C]lause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016) (alterations in original) (internal quotation marks omitted). "To succeed on an equal protection claim, a plaintiff must first demonstrate [1] that he has been treated differently from others with whom he is similarly situated and [2] that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "The plaintiff must plead sufficient facts to satisfy each of these requirements in order to state a cognizable equal protection claim." *Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir. 2017).

Here, Lindsey fails to allege that the defendants treated her differently from anyone else. She does not point to any other person who more easily obtained copies of records, secured copies of certified transcripts, or received responses from the defendants more quickly. In other words, Lindsey does not plausibly allege that she was "treated differently from others with whom [she] is similarly situated." *See Morrison*, 239 F.3d at 654. The Court, therefore, will dismiss Lindsey's equal protection claim with prejudice.

---

*See Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 464; *see also Thana v. Bd. of License Comm'rs for Charles Cty., Md.*, 827 F.3d 314, 318-19 (4th Cir. 2016).

### 3. *Counts Three and Four: 18 U.S.C. §§ 241 and 242*

In Counts Three and Four, Lindsey asserts claims under two federal criminal statutes: 18 U.S.C. §§ 241 and 242. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Because "[a] private person may not initiate a criminal action in the federal courts," Lindsey fails to state a claim in Counts Three and Four. *Ras-Selah: 7 Tafari: El v. Glasser & Glasser PLC*, 434 F. App'x 236, 236 (4th Cir. 2011) (per curiam). Accordingly, the Court will dismiss Counts Three and Four with prejudice.[9]

### 4. *Count Five: 28 U.S.C. § 1443*

In Count Five, Lindsey asserts a claim under 28 U.S.C. § 1443. Section 1443, however, is a procedural statute that allows a party to remove a case from state to federal court. *See* 28 U.S.C. § 1443. Section 1443, therefore, does not create a cause of action under which Lindsey can assert a claim. *See Flint v. Acree*, No. 3:15-CV-588-DJH, 2015 WL 9275743, at *4 (W.D. Ky. Dec. 18, 2015). Accordingly, the Court will dismiss Count Five with prejudice.

### 5. *Count Seven: Willful and Wanton Negligence and Reckless Negligence*

In Count Seven, Lindsey asserts a claim for "willful and wanton negligence and/or reckless negligence." (Am. Compl. at 20.) To state a claim for willful and wanton negligence,[10] a plaintiff must allege facts showing "an actual or constructive consciousness that injury [would] result from

---

[9] In her opposition brief, Lindsey says that she added the criminal claims "to provide substance for this Court to refer this case to the Department of Justice for review, for seating a [g]rand [j]ury[,] and possible criminal prosecution." (Dk. No. 30, at 3.) As a private citizen, Lindsey has no "constitutional, statutory, or common law right . . . to require a public official to investigate or prosecute a crime." *Doe v. Mayor of Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990); *see also Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988).

[10] In Virginia, "willful and wanton negligence" and "reckless negligence" are one in the same. *See Infant C. v. Boy Scouts of Am., Inc.*, 239 Va. 572, 581, 391 S.E.2d 322, 328 (1990).

the act done or omitted." *Alfonso v. Robinson*, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999). Aside from conclusory allegations, (*see* Am. Compl. ¶ 68), Lindsey does not allege any facts that plausibly show that the defendants knew that their actions would result in any harm to her. The Court, therefore, will dismiss Count Seven with prejudice.

### 6. *Count Eight: Gross Negligence*

In Count Eight, Lindsey asserts a claim for "gross negligence and violation of public trust."[11] (Am. Compl. at 21.) Under Virginia law, "[g]ross negligence is . . . that degree of negligence 'which shows indifference to others, disregarding prudence to the level that safety of others is completed neglected.'" *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 474 (E.D. Va. 2003) (quoting *Wilby v. Gostel*, 265 Va. 437, 445-46, 578 S.E.2d 796, 801 (2003)). "Gross negligence is negligence which shocks fair-minded people." *Wilby*, 265 Va. at 446, 578 S.E.2d at 801.

Aside from conclusory allegations, (*see* Am. Compl. ¶ 91), Lindsey does not allege any facts that plausibly show that the defendants acted with the required indifference. She says that the defendants failed to provide her with documents, delayed responding or ignored her requests, and mismanaged and altered documents. Assuming that those allegations are true, they do not rise to the level of indifference that would shock the conscious of a reasonable person. *See Green v. Ingram*, 269 Va. 281, 290-91, 608 S.E.2d 917, 922 (2005). As the defendants point out, the clerk's office in a busy state court system processes an enormous number of documents each day. Even if the defendants misplaced or mismanaged some of her documents, that conduct does not amount

---

[11] No cause of action for "violation of public trust" exists, which Lindsey appears to acknowledge. (*See* Dk. No. 30, at 11.)

to negligence that would shock a fair-minded person.  Accordingly, the Court will dismiss Count Eight with prejudice.

### *D. Futility of Amendment*

Federal Rule of Civil Procedure 15 directs courts to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Courts deny leave to amend if (1) amendment would prejudice the opposing party, (2) there has been bad faith, or (3) amendment would be futile. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). Because any amendment would be futile, the Court declines to grant Lindsey leave to file a second amended complaint.

## IV.  <u>CONCLUSION</u>

Because Lindsey fails to state a plausible claim for relief, the Court will grant the defendants' motions to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and the pro se plaintiff.

Date: 17 Jul 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge